UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DANIEL J. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-200 |
| | ) | |
| PORTER COUNTY EDUCATION SERVICES; | ) ) | JURY TRIAL DEMANDED |
| LISA FLYNN, in her official and individual capacities; | ) ) | |
| | ) | |
| Defendants. | ) | |

**Complaint for Declaratory and Injunctive Relief and Damages**

**Introduction**

1.	From 2012 to 2015, and then from 2017 to 2021, Daniel Carter was employed Porter County Education Services, an agency formed by a number of school corporations in Porter County to provide special education services within the corporations. During the 2020-2021 school year he was employed as a special education aide at Chesterton Middle School, a school within the Duneland School Corporation. During a meeting of an after-school club for which he volunteered, he noticed that an 8th grade student was playing with tarot cards that she had brought to the meeting. Mr. Carter talked to the student about the artwork on the cards and told the student that his wife had tarot cards that also had striking artwork. The student was not "reading" the cards and Mr. Carter knows nothing about tarot cards other than to admire the artwork. He told the student that he

[1]

would try to remember to bring the cards to show her. About a week later he saw the student at the school after the end of the school day. He showed the student the cards at the school and briefly talked to her. He was summarily fired by defendants for discussing "topics in no way related to your duties" with a student "outside your workday." The actions of the defendants violate the First Amendment to the United States Constitution and plaintiff is entitled to an injunction reinstating him to his employment and is also entitled to his damages.

**Jurisdiction, venue, and cause of action**

2.  This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

3.  Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

4.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

5.  This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.  Daniel J. Carter is an adult resident of Porter County, Indiana.

7.  Porter County Educational Services is a public entity established pursuant to Indiana Code § 36-1-7-1, *et seq.*, by a number of school corporations in Porter County, including Duneland School Corporation, to provide special educational services to their students.

8.      At all relevant times, Lisa Flynn was the Duneland District Director of Porter County Education Services. She is sued in her official and individual capacities.

**Factual allegations**

9.      Daniel J. Carter was employed as an aide providing special educational services by Porter County Educational Services beginning in 2012 until 2015 and then he was reemployed in 2017.

10.     For the 2020 to 2021 school year, Mr. Carter was placed at the Chesterton Middle School, one of the schools within the Duneland School Corporation.

11.     The school contains students in the 7th and 8th grades.

12.     The school had clubs that met at the school after the school day ended.

13.     Mr. Carter volunteered to assist with two of the clubs, the Tabletop Games Club and the Acceptance Club. He was one of a number of adults associated with the school who assisted with the clubs.

14.     In late April at a meeting of the Acceptance Club he noted that one of the students, an eighth grader, had a pack of tarot cards, which are playing cards that some use for attempting to divine the future.

15.     Tarot cards frequently have ornate artwork on them.

16.     The student was not a special education student, but as a faculty assistant to the club, Mr. Carter thought it appropriate to talk to the student, particularly as the purpose of the club was to foster acceptance.

17.     Therefore, when Mr. Carter saw the student looking at her cards, he approached her and told her that his wife had a deck of tarot cards that had very nice artwork on them, and he would be happy to bring them to the school and show them to her.

18.     The student indicated that she would like to see them.

19.     Mr. Carter does not know how to "read" tarot cards to attempt to divine the future or for any other purpose. He just admired the artwork on the cards.

20.     The conversation with the student was brief.

21.     After the conversation, Mr. Carter remembered to obtain the cards from his wife and kept them in his car.

22.     On May 7, 2021, he saw the student in the school shortly after the school day had ended.

23.     The student was inside the school, near its entrance, waiting for a parent to take her home.

24.     When he saw the student, Mr. Carter remembered that he still had the cards in his car, and he went to the car and retrieved them and approached the student.

25.     He showed her the artwork on the cards, and they spoke for between 5 and 10 minutes.

26.     On May 11, 2021, he was called into the office at Chesterton Middle School where he met with a number of administrators from the school; an Assistant Superintendent of

the Duneland School Corporation; and Ms. Flynn, the Duneland District Director of Porter County Education Services.

27. Mr. Carter was informed that there was a report that he had shown a student tarot cards and one of the persons present noted that these were considered "occult" items.

28. Mr. Carter indicated that he did not know how to "read" the cards or use them for "occult" or any other purpose. He explained that he was interested in the artwork and that is what he was showing during his brief conversation with the student.

29. Mr. Carter was told that he was going beyond his duties and that he was talking to the student outside of school hours.

30. His volunteer work with the school clubs also involved activities beyond his employment duties and talking to students outside of school hours.

31. He is aware that other school employees frequently will have casual and polite conversations with students outside of school hours that may not pertain to school activities.

32. Mr. Carter was sent home with pay.

33. However, at 3:30 p.m. that afternoon he received a telephone call from Ms. Flynn stating that he had been terminated from his position and that he would be receiving a letter to that effect.

34. He eventually received a letter from Porter County Education Services, signed by Ms. Flynn, dated May 18, 2021, that states in its entirety:

> Dear Mr. Carter,
>
> As previously advised, your employment with Porter County Education Services was terminated effective May 14, 2021. The decision was made after receiving a report of your approach of and interaction with a student. This interaction occurred outside your workday with a student who is not part of your assigned duties for PCES, and, as you acknowledge, about topics in no way related to your duties.

35. Mr. Carter's conversation with the student about the artwork on the tarot cards was about a matter of public concern in that discussion about the art on the cards is expression for which there is potentially a public. Indeed, the internet reflects the interest in the art of tarot cards. *See, e.g.*, Margaret Carrigan, THE ART NEWSPAPER, *The art of tarot, from the Renaissance to today*, Aug. 7, 2020, https://www.theartnewspaper.com/gallery/the-art-of-tarot (last visited June 20, 2021); ETSY, *Tarot card art*, https://www.etsy.com/market/tarot_card_art (last visited June 20, 2021); WE PRESENT, *The Art of the Tarot—Seeing despair, or the start of something new*, https://wepresentwetransfer.com/story/the-art-of-the-tarot/ (last visited June 20, 2021).

36. There was nothing improper or inappropriate with Mr. Carter sharing the artwork with the student who had expressed an interest in viewing it and the defendants had no justifications or reasons to discharge Mr. Carter for showing the cards and discussing their artwork with the student.

37. His sharing of the artwork on the tarot cards and the brief discussion that he had with the student about the artwork did not disrupt or otherwise interfere with or hinder

the educational functions of the Chesterton Middle School, the Duneland School Corporation, or Porter County Education Services.

38. But for Mr. Carter showing the tarot cards and discussing their artwork with the student, he would not have been discharged by the defendants.

39. Defendants' actions have caused Mr. Carter the loss of income and other damage.

40. At the current time, Mr. Carter is also being caused irreparable harm for which there is no adequate remedy at law.

41. At all times defendants have acted under color of state law.

**Jury trial demand**

42. Plaintiff demands a trial by jury on all claims so triable.

**Legal claim**

43. The actions of defendants in discharging plaintiff violated plaintiff's rights protected by the First Amendment to the United States Constitution.

WHEREFORE, plaintiff requests that this Court:

a. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

b. Declare that defendants have violated the constitutional rights of plaintiff for the reasons noted above.

c. Enter a preliminary injunction, later to be made permanent, ordering defendants to immediately reinstate plaintiff to his former position.

    d.    After trial, award plaintiff his damages.

    e.    Award plaintiff his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

    f.    Award all other proper relief.

> Kenneth J. Falk
> Stevie J. Pactor
> ACLU of Indiana
> 1031 E. Washington St.
> Indianapolis, IN 46202
> 317/635-4059
> fax: 317/635-4105
> kfalk@aclu-in.org
> spactor@aclu-in.org
>
> Attorneys for Plaintiff